IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOEL W. GREEN,                            )
                                          )
    Plaintiff,                            )
                                          )
v.                                        )   CIVIL ACTION 10-0481-WS-M
                                          )
CLYDE M. ROBERTS, III, *et al.*,          )
                                          )
    Defendants.                           )

**ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss (doc. 13). That Motion has been briefed and is now ripe for disposition.[1]

**I.    Background.**

On January 26, 2006, an explosion rocked the merchant vessel M/V CAPE EDMONT as it underwent repairs in a South Carolina shipyard. Plaintiff, Joel W. Green, who was employed aboard the vessel as a welder, sustained injuries in that explosion. On September 3, 2010 (more than four and a half years later), Green commenced this action by filing the Complaint (doc. 1) in

---

[1] Plaintiff has also filed a Motion for Oral Argument (doc. 45) on the grounds that plaintiff wishes to respond to defendants' Reply Brief (doc. 44) "without the burden of further briefs to the Court," and that the circumstances presented by the pending Rule 12(b)(6) Motion "are unusual if not unique." (Doc. 45, at 1.) The Local Rules provide that "the court may in its discretion rule on any motion without oral argument." LR 7.3; *see also Brokaw v. Weiser Sec.*, 780 F. Supp.2d 1233, at n.1 (S.D. Ala. 2011) (denying oral argument where "the undersigned is of the opinion that oral argument would not be helpful here"). Upon careful review of the parties' memoranda, the Court has a firm grasp of the parties' positions, and does not believe that oral argument would be illuminating in that regard. Moreover, insofar as plaintiff is concerned about not having an opportunity to rebut new arguments in defendants' reply, such new arguments (should there be any, as opposed to proper responses to plaintiff's arguments) will not be considered. *See, e.g., Sharpe v. Global Sec. Int'l*, 766 F. Supp.2d 1272, 1294 n.26 (S.D. Ala. 2011) ("Because it is improper for defendant to raise this new argument in its reply brief, that argument will not be considered."); *Abrams v. Ciba Specialty Chemicals Corp.*, 663 F. Supp.2d 1220, 1232 n.16 (S.D. Ala. 2009) ("new arguments are impermissible in reply briefs"). Plaintiff's Motion for Oral Argument (doc. 45) is **denied**.

this District Court, naming Clyde M. Roberts, III, and Independent Marine Consultants, Inc. ("Independent Marine") as defendants. The gravamen of the Complaint is that Roberts (who is alleged to have been directly supervising the repair work) caused Green's injuries by negligently failing to manage the work with customary safety rules and regulations, failing to take action despite notice and opportunity to alleviate dangerous conditions, failing to enforce his own orders and directives when violations were within his observation, and the like. On that basis, the Complaint alleges maritime tort claims against Roberts for negligence and willfulness. Plaintiff also brings claims against Independent Marine (Roberts' company) for negligence, seeking to hold that defendant liable for Roberts' conduct.

Plaintiff anticipated from the outset that a statute of limitations challenge would be forthcoming from defendants. To defend the timing of filing this action, Green specifically alleges in the Complaint that (i) he was prohibited by law from bringing suit against Roberts or Independent Marine until a March 2010 judicial determination in another lawsuit that defendants were not agents of the United States; and (ii) he did not discover or have knowledge of defendants' involvement until obtaining such information from the United States in discovery in that other action on November 15, 2007. (Doc. 1, ¶¶ 12-13.)[2]

---

[2] In that regard, it is helpful to note that Green initially sued the United States (but not Roberts or Independent Marine) for negligence in the U.S. District Court for the Middle District of Florida. The United States owned the M/V CAPE EDMONT at all material times. In that action, Green sought, *inter alia*, to hold the United States liable for alleged acts and omissions of Roberts. The Florida court conducted a bench trial in May 2009, and issued findings of fact and conclusions of law in March 2010. In that ruling, the Florida court made specific determinations that Green "failed to offer any evidence of a direct agency relationship between Roberts and the United States" and "presented no evidence that Roberts had any interaction or contact with the United States," prompting that court to conclude "that there was no direct agency relationship between Roberts and the United States" and that "Roberts's conduct is not attributable to the United States." (Doc. 41, Exh. 4, at 35-36.) The Florida court's determinations on the agency issue were affirmed on appeal. Indeed, the Eleventh Circuit issued an opinion on March 22, 2011, explaining that "Green failed to introduce any evidence that the United States either knew that Marine Transport had hired Roberts or consented for Roberts to act on behalf of the United States." The Eleventh Circuit further opined that "[t]he United States had an agency relationship with Marine Transport, not Roberts," and that "Green failed to prove that Roberts was a subagent of the United States" because he "submitted no evidence that Marine Transport could appoint subagents" and because Green did not challenge the lower court's finding that "Roberts was not an employee of Marine Transport." (Doc. 31, Exh. A, at 11-13.)

As expected, defendants filed a Motion to Dismiss, wherein they maintain that Green's claims against them are facially barred by the applicable three-year statute of limitations. Plaintiff's Response (doc. 41) asserts that the Motion is improper, that he brought his claims in this action within three years after they accrued, and that the Complaint should be deemed timely under doctrines of equitable tolling or equitable estoppel, in any event. These issues have now been briefed.

**II.     Analysis.**

    *A.     The Motion is Not Improper.*

As a threshold matter, Green urges the Court not to reach the merits of the Motion to Dismiss, but instead to deny it summarily as premature. Under well-settled law, there are significant constraints on a defendant's ability to litigate a limitations defense at the pleadings stage. *See, e.g., La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("A statute of limitations bar is an affirmative defense and … plaintiffs are not required to negate an affirmative defense in their complaint.") (citation and internal marks omitted); *McMillian v. AMC Mortg. Services, Inc.*, 560 F. Supp.2d 1210, 1213 (S.D. Ala. 2008) ("A statute of limitations defense is generally not appropriate for evaluation on a Motion to Dismiss …."). But a limitations defense may be properly raised and litigated via Rule 12(b) motion if a claim is time-barred on the face of the Complaint. *See Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment CSX Transp. Northern Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008) ("A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.") (citation and internal quotation marks omitted); *cf. Smith v. Norfolk Southern R. Co.*, 767 F. Supp.2d 1276, 1279 (S.D. Ala. 2011) ("The face of the Complaint reveals no obvious limitations defect; therefore, defendant has jumped the gun by seeking Rule 12(b)(6) dismissal of this action on limitations grounds, rather than waiting until summary judgment.").

In this case, Green's Complaint suffers from a facially apparent limitations defect. There is no dispute that his claims are governed by a three-year statute of limitations. *See* 46 U.S.C. § 30106 ("Except as otherwise provided by law, a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose."); *Taurel v. Central Gulf Lines*, 947 F.2d 769, 771 (5th Cir. 1991) ("under the general maritime law, a plaintiff must bring a suit for damages for personal injuries within three years

from the date the cause of action accrues").[3] As pleaded in the Complaint, his negligence / wantonness claims relate to an accident that occurred in January 2006, yet he did not file suit against defendants until September 2010. The delay of more than four years between the explosion that forms the basis of Green's maritime tort claims and the filing of the Complaint gives rise to just the sort of facial timeliness defect that is properly presented and litigated via Rule 12(b)(6) Motion at the pleadings stage. The Court will therefore consider it on the merits, notwithstanding plaintiff's objection that the Motion is premature.[4]

### B.  *Plaintiff's Claims Accrued in 2006 and are Untimely.*

The language of the relevant limitations statute provides that Green must bring his claims against Roberts and Independent Marine "within 3 years after the cause of action arose." 46 U.S.C. § 30106. Plaintiff asserts that he satisfied this requirement because he in fact filed the Complaint within three years after his claims accrued. The linchpin of this argument is plaintiff's contention that his claims accrued in November 2007, when the United States first disclosed Roberts' identity to him.

The problem for plaintiff is that it does not matter for limitations purposes when he discovered Roberts' identity; rather, accrual under § 30106 occurs when a plaintiff knows or should know of his injury and its cause. *See, e.g., White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1435 (11th Cir. 1997) ("[W]e hold that a cause of action 'accrues' for the purposes of 46 U.S.C.App. § 763a when the plaintiff knew or should have known of his injury and its cause."); *Burke v. Quick Lift, Inc.*, 464 F. Supp.2d 150, 159 (E.D.N.Y. 2006) ("for a claim governed by the Maritime Limitations Statute, the 'discovery rule' directs that the claim accrues

---

[3]  In this regard, plaintiff expressly acknowledges the applicability of the three-year limitations period prescribed by § 30106, although he refers to it by its predecessor citation of 46 U.S.C.App. § 763a. *See* doc. 41, at 2 (asserting that the three-year maritime statute of limitations formerly prescribed by § 763a "is applicable to this maritime case").

[4]  Plaintiff's brief alludes to the need for "discovery during the course of the proceedings" concerning a statute of limitations affirmative defense. (Doc. 41, at 1.) But Green articulates no reasoned basis for requiring discovery on the limitations defense in this case. To the contrary, he admits elsewhere that "plaintiff's discovery has been completed" (*id.* at 10) and chronicles his accumulated evidence concerning his knowledge of Roberts' involvement and the accrual of his causes of action. In short, it is apparent from plaintiff's own submission and admissions that no discovery is needed at this time to flesh out predicate facts on which the limitations defense rests.

when the plaintiff knew or should have known of the injury that is the basis of the action"); *Tanner v. Academy Tankers Inc.*, 898 F. Supp. 421, 424 (E.D. Tex. 1995) ("The time for filing a cause of action under the Jones Act and general maritime law begins to run when a plaintiff has had a reasonable opportunity to discover his injury, its cause, and the link between the two.") (citations and internal quotation marks omitted); *Long v. United States*, 2008 WL 956723, *1 (W.D. Ky. Apr. 8, 2008) (construing § 30106 as setting a "three-year statute of limitations running from the date of injury"). Green does not and cannot reasonably challenge that he knew of his injury and its cause as of the date of the accident itself in January 2006; therefore, his claims against Roberts and Independent Marine accrued that day, and the three-year limitations clock established by § 30106 began ticking at that time.[5]

Simply put, Green's claims accrued for limitations purposes more than three years before he filed suit against Roberts and Independent Marine, and are therefore time-barred on their face. "[W]e are not free to construe [the statute of limitations] so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." *McCullough v. United States*, 607 F.3d 1355, 1362 (11th Cir. 2010); *see also Favorite v. Maritime Personnel and Provisioning,*

---

[5] In his brief, Green does not endeavor to distinguish the foregoing line of authorities, much less to explain why the facts of this case would satisfy the accrual test set forth therein. Instead, plaintiff argues that this Court should apply the "diligence-discovery rule of accrual, as discussed and applied in *Valdez ex rel. Donely v. U.S.*, 518 F.3d 173 (2nd Cir. 2008)." (Doc. 41, at 2.) But *Valdez* was a medical malpractice case that did not involve claims for maritime torts or application of § 30106. Plaintiff does not identify a single authority that has imported *Valdez* into the § 30106 realm, nor does he come forward with argument or explanation for why he thinks it would be appropriate to do so here. More fundamentally, Green does not explain how the "diligence-discovery rule" works or why he thinks it would render his claims timely. The plain text of *Valdez* suggests otherwise. *See Valdez*, 518 F.3d at 177 & n.1 (under "diligence-discovery rule," cause of action accrues when "plaintiff has or with reasonable discovery should have discovered the critical facts of both his injury and its cause" and "in most cases the plaintiff will discover his injury on the date that it occurs") (citation omitted). Plaintiff having failed to develop his argument that *Valdez* applies here or would yield a different accrual date than January 26, 2006, the Court will not fill in the blanks for him. *See, e.g., Harris v. Hancock Bank*, 2011 WL 1435500, *2 n.4 (S.D. Ala. Apr. 14, 2011) ("Federal courts generally do not develop arguments that the parties could have presented but did not."); *Pears v. Mobile County*, 645 F. Supp.2d 1062, 1081 n.27 (S.D. Ala. 2009) ("The parties … cannot be heard to balk if the undersigned does not perform their research and develop their arguments for them.").

*Inc.*, 955 F.2d 382, 389 (5th Cir. 1992) (recognizing "statutory purpose of encouraging prompt presentation of claims").[6]

### C. *Plaintiff's Claims Are Not Saved by Equitable Tolling or Equitable Estoppel.*

As shown by the foregoing discussion, Green's claims against Roberts and Independent Marine were subject to the three-year limitations period specified in 46 U.S.C. § 30106, but they accrued more than four and a half years before plaintiff filed the Complaint. Notwithstanding these findings, Green urges the Court to deem his claims timely under principles of equitable tolling and equitable estoppel.

#### 1. *Circumstances Underlying Plaintiff's Equitable Arguments.*

Green identifies an array of facts in support of his equitable tolling / equitable estoppel arguments, as follows:[7] Plaintiff first discovered Roberts' identity in the Florida litigation when the United States disclosed his name (but nothing about his title or duties) in initial disclosures dated November 15, 2007. (Doc. 41, Exh. 1, at 2.) Plaintiff subsequently interviewed Roberts and obtained a declaration from him on July 3, 2008 concerning his role and activities as to the M/V CAPE EDMONT repairs at the time of the explosion. (Doc. 41, Exh. 2.) Roberts provided further detail and elaboration concerning his involvement when his deposition was taken in the Florida action on July 17, 2008. (Doc. 41, Exh. 5.) Based on facts to which Roberts testified in that declaration and deposition (which Green does not suggest were false, incomplete, or inaccurate in any way), plaintiff's counsel concluded that Roberts was an agent of the United States because he was an employee or agent of Marine Transport Lines, which in turn was the United States' agent for purposes of the repair work being performed on the vessel by Green's employer. Indeed, plaintiff remained convinced, even after hearing Roberts' complete version of

---

[6] Insofar as Green relies on equitable circumstances in calculating the accrual of his claim for limitations purposes (as opposed to a distinct equitable tolling or estoppel argument), such reliance is misplaced. *See generally United States v. Kubrick*, 444 U.S. 111, 124, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) ("If [a plaintiff] fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit ….").

[7] For purposes of this Motion to Dismiss, the Court accepts Green's factual allegations as true and assumes that the Florida litigation played out in precisely the manner that plaintiff claims it did.

-6-

the facts, that Roberts "was still clearly an agent of the United States." (Doc. 41, at 8.) In light of that legal assessment, plaintiff determined that it would be improper (and potentially sanctionable) to file suit against Roberts over the January 2006 explosion.[8]

To plaintiff's chagrin, however, the U.S. District Court for the Middle District of Florida did not share his view that there was an agency relationship between Roberts and the United States.[9] Rather, in Findings of Fact and Conclusions of Law dated March 22, 2010, that court concluded that Roberts "was an independent contractor and not an employee of [Marine Transport Lines]" and that Green "failed to offer any evidence of a direct agency relationship between Roberts and the United States," such that "Roberts's conduct is not attributable to the

---

[8] In particular, plaintiff's assessment was that, under the Suits in Admiralty Act and the Public Vessels Act, his exclusive remedy was against the United States, and that "[a]ttorneys who fail to make a reasonable inquiry and attempt to sue agents of the United States are subject to sanctions." (Doc. 41, at 4.) It is well-established that admiralty claims involving vessels owned by the United States cannot be maintained against agents or employees of the United States. *See* 46 U.S.C. § 30904 ("If a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States … whose act or omission gave rise to the claim."); *Kasprik v. United States*, 87 F.3d 462, 466 (11th Cir. 1996) ("we conclude that the exclusivity provision of the Suits in Admiralty Act precludes any action for punitive damages against OMI as the agent operating a vessel owned by the United States"); *Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 997 (9th Cir. 1997) (under Suits in Admiralty Act, "where a remedy lies against the United States, a suit against an agent of the United States by reason of the same subject matter is precluded"); *Manuel v. United States*, 50 F.3d 1253, 1255 (4th Cir. 1995) (explaining that Suits in Admiralty Act's exclusivity provision "precludes recovery against an agent of the United States operating a government-owned vessel on any claim for which the SAA or the PVA provides a remedy against the United States").

[9] The Florida court did not reach this decision *sua sponte* or in a vacuum; to the contrary, it did so only upon consideration of the United States' argument that "Roberts acted as a non-agent independent contractor whose conduct cannot be attributed [to] the United States." (Doc. 41, Exh. 4, at 30.) In other words, plaintiff knew in the Florida action that the United States was contesting Roberts' agency status. Indeed, it appears that a cornerstone of the United States' defense in that case was that Roberts was not its agent, such that the United States could not be held responsible for Roberts' acts or omissions that may have caused the explosion onboard the M/V CAPE EDMONT. For example, in a Trial Brief filed in the Florida action on April 24, 2009, the Government devoted several pages to its position that Roberts was not its agent or subagent, such that any errors or omissions on his part could not impute negligence to the United States. It was thus no surprise that Roberts' agency status (or lack thereof) vis a vis the United States was a hotly contested issue in the Florida suit.

United States." (Doc. 41, Exh. 4, at 33, 35.) As Green now puts it, "[t]o say that the plaintiff was surprised by the decision would be an understatement," and plaintiff believes to this day "that the ultimate holding of the trial court was in error." (Doc. 41, at 8, 9.) Although Green appealed this determination, the Eleventh Circuit affirmed it on appeal in a written opinion dated March 22, 2011. Based on these circumstances, plaintiff seeks relief from the statute of limitations for suing Roberts and Independent Marine on grounds of equitable tolling or equitable estoppel. Neither applies here.[10]

### 2. *Equitable Tolling.*

"Equitable tolling is a form of extraordinary relief that courts have extended only sparingly." *Brotherhood of Locomotive Engineers*, 522 F.3d at 1197; *see also Wallace v. Kato*, 549 U.S. 384, 396, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."). In this Circuit, equitable tolling is appropriate only when a movant "untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence. … The plaintiff bears the burden of showing that such extraordinary circumstances exist." *Brotherhood of Locomotive Engineers*, 522 F.3d at 1197 (citations and internal quotation marks omitted); *see also Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) (similar); *Bost v. Federal Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004) (similar).[11]

---

[10] As a threshold matter, Green balks that "[e]quitable tolling and estoppel questions are questions of fact that should not be subject to summary dismissal." (Doc. 41, at 21-22.) But he proffers no authorities forbidding disposition of these issues on a Rule 12(b)(6) motion. More importantly, he has identified no questions of fact embedded in his equitable tolling / equitable estoppel arguments. In any event, in considering these defenses to the statute of limitations, the Court has accepted all of plaintiff's factual allegations as true. Nor has plaintiff suggested that he requires discovery on these equitable affirmative defenses at this time; to the contrary, he concedes that such discovery has already been completed. (*See* doc. 41, at 10.) Given these circumstances, it would serve no constructive purpose to delay adjudication of equitable tolling and estoppel issues until a later stage of these proceedings.

[11] The Eleventh Circuit has found that "equitable tolling is appropriate in situations where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against her." *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 (11th Cir. 2005).

On this record, Green has not made the requisite showing of extraordinary circumstances that are both beyond his control and unavoidable even with diligence. Plaintiff does not allege that Roberts ever misled him about the true facts, or that he had no way of discovering facts concerning Roberts' identity and role prior to expiration of the limitations period. To the contrary, plaintiff admits the following: (i) plaintiff knew Roberts' identity by no later than November 2007; (ii) plaintiff's attorneys interviewed Roberts regarding this matter in June 2008; and (iii) Roberts gave a deposition in July 2008 in which he expressly testified that he was not Marine Transport Lines' employee. On the strength of these revelations, plaintiff could have filed suit against Roberts in 2008, well before the three-year limitations period expired. Yet plaintiff refrained from bringing claims against Roberts because of plaintiff's counsel's legal conclusion that Roberts was an agent of the United States, such that the Suits in Admiralty Act precluded liability against Roberts. But federal trial and appellate courts, looking at the same facts from which plaintiff's counsel surmised that Roberts was "clearly an agent of the United States," found that he was not a United States agent. Now that federal courts have held (after expiration of the three-year limitations period) that Roberts was not a United States agent, such that the Suits in Admiralty Act would not bar legal action against him, Green wants to sue Roberts (both individually and through Independent Marine, a company that Roberts controls) in this action. But the limitations period has expired.

At the heart of it, then, Green invokes equitable tolling to rescue him from the adverse consequences of a legal conclusion that proved to be incorrect.[12] Where this kind of legal error or mistake by a plaintiff or his counsel has resulted in failure timely to file a complaint, courts have routinely deemed such circumstances <u>not</u> to warrant application of equitable tolling. *See generally Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) ("Mere attorney negligence does

---

[12] This Court will not revisit the merits of the underlying issue in the Florida action as to whether Roberts was or was not a United States agent. To be sure, the undersigned is well aware that Green disagrees with the rulings of both the Middle District of Florida and the Eleventh Circuit that Roberts was not a United States agent. But those courts unequivocally ruled against Green on that question. This Court will not second-guess or look behind them. For purposes of this case, insofar as plaintiff assumed or determined that Roberts was a United States agent, and relied on that determination in refraining from bringing claims against Roberts prior to the expiration of the limitations period, plaintiff proceeded from an erroneous legal conclusion.

not justify equitable tolling."); *Wakefield v. Railroad Retirement Bd.*, 131 F.3d 967, 970 (11th Cir. 1997) ("Ignorance of the law usually is not a factor that can warrant equitable tolling."); *Justice v. United States*, 6 F.3d 1474, 1480 (11th Cir. 1993) ("Principles of equitable tolling … do not extend to what is at best a garden variety claim of excusable neglect.") (citation omitted); *Gant v. Jefferson Energy Co-op.*, 2009 WL 2993827, *2 (11th Cir. Sept. 21, 2009) ("equitable tolling does not apply in his case because the negligence of an attorney will not excuse lack of timeliness").[13]

The bottom line is that there is nothing unfair, unjust, or inequitable about holding Green to the letter of the three-year limitations period for his claims against Roberts and Independent Marine. With assistance of counsel and after full access to Roberts' version of the facts via interview, declaration and deposition, plaintiff reached an assessment that Roberts was a United States agent who could not be sued under the Suits in Admiralty Act. Plaintiff could have hedged his bets by bringing claims against the United States and Roberts in the alternative.[14] For

---

[13] For example, the Eleventh Circuit declined to allow equitable tolling in a civil action in which the plaintiff tarried in filing suit because of a mistaken belief that the federal court lacked subject matter jurisdiction, which the appellate court chalked up to a "garden variety claim of excusable neglect." *Crist v. Carnival Corp.*, 2010 WL 4904166, *4-5 (11th Cir. Dec. 2, 2010) (frowning on notion that "a plaintiff could use equitable tolling to excuse what is simply garden-variety negligence").

[14] Indeed, it is bedrock principle of federal civil procedure that pleading in the alternative is an accepted practice. *See, e.g.,* Rule 8(d)(2), Fed.R.Civ.P. ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically …."); Rule 8(d)(3), Fed.R.Civ.P. ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009) ("First, we are not troubled by what the district court saw as inconsistent allegations. Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims."). Plaintiff's suggestion that he did not initially bring suit against Roberts because he "was legally barred" from doing so and "would have been subject to sanctions" amounts to hyperbole. (Doc. 41, at 2.) If the Middle District of Florida and the Eleventh Circuit – reviewing the same facts that plaintiff's counsel had in the summer of 2008 – determined that Roberts was <u>not</u> a United States agent, how could it have been improper or sanctionable for plaintiff's counsel to rely on those very facts to bring their claims against Roberts, premised on his lack of agency status, back in 2008? If plaintiff truly felt that he was "barred" from suing Roberts in 2008, then it is only because he was operating under a mistaken legal conclusion that cannot support equitable tolling. And plaintiff's reliance on *Tarver v. United States*, 785 F. Supp. 607 (S.D. Miss. 1991), for the notion that his attorneys "risked sanctions for commencing an action against Roberts" (doc. 41, at 12) is unpersuasive because the posture of *Tarver* was (Continued)

whatever reason, he elected not to do so. Too late, plaintiff realized his mistake, when federal district and appellate courts found that he had not come forward with evidence that Roberts was the United States' agent. Nothing in these facts and circumstances justifies application of the extraordinary remedy of equitable tolling to excuse Green's untimely filing of this lawsuit, which he could have avoided with diligence.

### 3. *Equitable Estoppel.*

Plaintiff's equitable estoppel argument fares no better. "The equitable principle of estoppel prevents a defendant whose representations or other conduct have caused a plaintiff to delay filing suit until after the running of the statutory period from asserting that bar to the action." *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1231 (5th Cir. 1980) ("in order to create an estoppel, the conduct of the defendant must be so misleading as to cause the plaintiff's failure to file suit"). In the federal admiralty context, the Eleventh Circuit has explained that "[f]or equitable estoppel to apply there must be a representation of fact by one party contrary to a later asserted position, good faith reliance by another party, and a detrimental change in position by the later party due to the reliance." *Sea Byte, Inc. v. Hudson Marine Management Services, Inc.*, 565 F.3d 1293, 1304 (11th Cir. 2009); *see also Marine Transp. Services Sea-Barge Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1139 (11th Cir. 1994) (doctrine of equitable estoppel "requires (1) a representation of fact by one party contrary to a later asserted position; (2) good faith reliance by another party upon the representation; and (3) a detrimental change in position by the later party due to the reliance").

In invoking equitable estoppel, Green would force a square peg into a round hole. The circumstances presented here simply cannot be contorted into the equitable estoppel paradigm. Most glaringly, there is no indication or suggestion that Roberts or Independent Marine flip-flopped their positions, made factual misrepresentations to Green, or otherwise engaged in

---

drastically and materially distinct from that of this case. Again, plaintiff's argument for equitable tolling boils down to a contention that he incorrectly applied the law to the facts concerning Roberts' legal relationship with the United States, and did not discover his error until the Middle District of Florida and the Eleventh Circuit rulings in the Florida case. That is simply not a viable basis for equitable tolling.

misconduct that caused Green to refrain from filing suit against them back in 2008.[15]  At best, plaintiff theorizes that equitable estoppel should apply because "the sworn testimony of Mr. Roberts precluded an action against him. … Nothing about his testimony … would have allowed Green's attorneys … to determine that Roberts was not an agent of the United States, and therefore amenable to suit. … [B]ecause of the facts as urged by Mr. Roberts himself, Plaintiff was absolutely barred from instituting an action against him." (Doc. 41, at 21, 22.)[16]  Critically, plaintiff does not contend that Roberts' testimony was in any way false or inaccurate.  He does not maintain that Roberts <u>ever</u> changed his position, recanted his testimony, or offered a materially different account of the facts to Green to "throw him off the scent" in the earlier litigation.  To the contrary, by all appearances, Roberts' testimony concerning his relationships and interactions with Marine Transport Lines and the United States has been consistent and unwavering since the day plaintiff's attorneys first interrogated him.  It's just that federal courts construed that testimony differently than plaintiff did.

In short, there is no indication that Roberts ever held himself out to Green as being an agent of the United States; rather, Roberts presented the facts as they were, and Green drew his

---

[15]  Misconduct is a hallmark of equitable estoppel.  *See, e.g., Browning v. AT&T Paradyne*, 120 F.3d 222, 226 (11th Cir. 1997) ("[e]quitable estoppel does require an allegation of misconduct on the part of the party against whom it is made"); *General American Life Ins. Co. v. AmSouth Bank*, 100 F.3d 893, 899 (11th Cir. 1996) ("a party cannot be estopped unless it has knowledge of the true facts and communicates something misleading to another who relies upon the communication"); *Lekas v. United Airlines, Inc.*, 282 F.3d 296, 301 (4th Cir. 2002) ("equitable estoppel applies where the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline, even though the plaintiff knows that it exists") (citation and internal quotation marks omitted).  Plaintiff concedes as much in his brief.  (Doc. 41, at 19.)

[16]  Plaintiff's extreme characterization is not warranted by Roberts' testimony.  After all, Roberts unequivocally testified in July 2008 that he was not an employee of Marine Transport Lines.  When asked "Were you ever an employee of MTL?" Roberts responded, "No, I wasn't. … I have never worked for them, no." (Doc. 41-5, at 192-93.)  Likewise, Roberts testified in July 2008 that he had "total discretion" to perform the job as he saw fit, a fact tending to negate the right of control that is vitally important to an employment or agency relationship.  (*Id.* at 49.)  And Green identifies no record evidence that Roberts ever testified to having any kind of direct interaction or contact with the United States, which the Florida court found highly significant in the agency analysis.  (Doc. 41-4, at 35-36.)  The flaws in Green's agency argument were thus perceptible in Roberts' own testimony in July 2008.  That Green failed to discern (or chose to ignore) those warning flags is in no way the product of culpable conduct by Roberts that might give rise to application of the doctrine of equitable estoppel.

own conclusions. That Green reached an incorrect inference from those facts (to-wit: that Roberts was an agent of the United States) is in no way attributable to misconduct or misleading statements by Roberts. This is not a viable basis for deployment of the equitable estoppel doctrine. Nor is equitable estoppel appropriate where, as here, federal trial and appellate courts interpreted a given set of facts differently than a plaintiff did. This is simply not the sort of injustice that the doctrine is designed to cure. Accordingly, plaintiff's claims are not saved from untimeliness by principles of equitable estoppel.

### III. Conclusion.

For all of the foregoing reasons, Defendants' Motion to Dismiss (doc. 13) is **granted**. Because all of plaintiff's claims asserted herein are time-barred on their face, and because the narrow doctrines of equitable tolling and equitable estoppel have no application here, this action is **dismissed with prejudice**. A separate judgment will enter.

DONE and ORDERED this 14th day of October, 2011.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE